IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| McKinney Dodge Chrysler Jeep, Inc. d/b/a McKinney Mazda, | ) )  ) |
| Plaintiff, | ) C.A. No. 8:22-cv-00496-HMH ) ) **OPINION & ORDER** |
| vs. | ) ) |
| Mazda Motor of America, Inc, d/b/a Mazda North American Operations, | ) ) ) |
| Defendant. | ) ) |

This matter is before the court on Defendant Mazda Motor of America, Inc. d/b/a Mazda North American Operations' ("Mazda") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants in part and denies in part Mazda's motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The issues raised in the instant case concern a purported succession plan to transfer the franchised ownership interest in McKinney Dodge Chrysler Jeep, Inc. d/b/a McKinney Mazda ("McKinney") from Timothy J. McKinney ("Tim") to members of his family following his death. McKinney began operating as a duly licensed Mazda franchised motor vehicle dealer in Easley, South Carolina in 2004. (Not. Removal Ex. A (Compl. ¶¶ 6-7, 17), ECF No. 1-1.) In spring 2020, Tim was diagnosed with Amyotrophic Lateral Sclerosis ("ALS"). (Id. Ex. A (Compl. ¶ 9), ECF No. 1-1.) Tim's brother, John M. McKinney ("John") served as the Vice President and Director of Operations for McKinney. (Not. Removal Ex. A (Compl. ¶ 10), ECF No. 1-1.) As a result of Tim's diagnosis, he executed a number of corporate and estate

1

documents, including the Timothy J. Mckinney Revocable Trust ("Trust") in which Tim served as the sole trustee until his death on June 12, 2021.  (Id. Ex. A (Compl. ¶ 9), ECF No. 1-1.)  Tim transferred his 100% ownership of McKinney stock to the Trust when these documents were executed.  (Id. Ex. A (Compl. ¶ 9), ECF No. 1-1.)

In addition, McKinney alleges that Tim contacted Mazda to obtain approval for Daniel Black to replace him as General Manager of McKinney due to his illness.  (Pl.'s Ans. to Def.'s Countercl. ¶ 6, ECF No. 20.)  Mazda approved Tim's request in November 2020.  (Id. ¶ 6, ECF No. 20.)

A dispute arose after Tim's death regarding the trust, resulting in an action in South Carolina probate court to determine disputed ownership issues.  (Not. Removal Ex. A (Compl. ¶ 11), ECF No. 1-1.)  McKinney avers that "[t]he Trust document being disputed provided that the eventual share transfer would provide John with 100% (instead of 90%) of the Class A voting shares in McKinney Mazda."  (Not. Removal Ex. A (Compl. ¶ 14), ECF No. 1-1.)  McKinney alleges that it "notified its field representative [at Mazda] of Tim's death immediately," and that "John communicated further with Mazda North America's Manager of Regional Network Operations regarding Tim's death in early July 2021."  (Not. Removal Ex. A (Compl. ¶ 12), ECF No. 1-1.)  On October 21, 2021, John sent Mazda "a letter summarizing Tim's transfer of shares to his Trust and the eventual anticipated share transfers to John after Probate issues were resolved."  (Id. Ex. A (Compl. ¶ 13), ECF No. 1-1); (Pl.'s Ans. to Def.'s Countercl. ¶ 8, ECF No. 20.)   According to McKinney, Mazda, through its Mazda North America Manager, did not object to any of the information contained in the letter summarizing

the transfer and told John "to let him know when he was ready to begin the application process." (Id. Ex. A (Compl. ¶ 16), ECF No. 1-1.)

On January 4, 2022, John attempted to renew the dealer license for McKinney, but was informed by the South Carolina Department of Motor Vehicles ("SCDMV") that the license would not be renewed due to Tim's death. (Not. Removal Ex. A (Compl. ¶ 18), ECF No. 1-1.) Instead, John was informed that February 1, 2022, was the deadline to obtain the new license. (Not. Removal Ex. A (Compl. ¶ 18), ECF No. 1-1.) As part of the application process, the SCDMV required a "Manufacturer's letter" confirming that McKinney was authorized to sell Mazda vehicles. (Not. Removal Ex. A (Compl. ¶ 19), ECF No. 1-1.) Mazda responded to John's request for a "Manufacturer's letter" by requesting that John begin the application process to transfer the ownership from Tim's name to John's. (Not. Removal Ex. A (Compl. ¶ 23), ECF No. 1-1.) McKinney alleges that John complied with this request "immediately upon Mazda North America[] providing an electronic software portal to begin submitting documents, which Mazda made available on January 21, 2022." (Id. Ex. A (Compl. ¶ 23), ECF No. 1-1.)

Ultimately, McKinney received two "Notice of Termination" letters on February 3, 2022, advising McKinney that Mazda was terminating the franchise agreement due to the lapse of the SCDMV license as of February 1, 2022, and "failure to receive prior approval of Tim McKinney's Succession Plan." (Id. Ex. A (Compl. ¶ 26, ECF No. 1-1); (Resp. Opp'n 5, ECF No. 25.) McKinney alleges that Mazda provided a copy of the Manufacturer Letter required by the SCDMV nine days after the instant action was filed. (Resp. Opp'n 6, ECF No. 25.)

McKinney filed the instant action on February 8, 2022, in the Court of Common Pleas for Pickens County, South Carolina. (Not. Removal Ex. A (Compl.), ECF No. 1-1.) Mazda

removed the action to this court on February 15, 2022, on the basis of diversity and federal question jurisdiction, 28 U.S.C. §§ 1331, 1332. (Not. Removal, ECF No. 1.) In the complaint, McKinney asserts claims for (1) injunctive relief; (2) violations of the South Carolina Dealers Act; (3) breach of contract; (4) breach of contract accompanied by a fraudulent act; (5) violations of 15 U.S.C. § 1221 et seq; and (6) equitable estoppel.[1] (Id. Ex. A (Compl., generally), ECF No. 1-1.) On March 18, 2022, Mazda answered, denying liability and asserting a counterclaim for a declaratory judgment requesting a declaration that (1) the Dealer Agreement is a binding and enforceable contract; (2) McKinney Mazda materially breached the Dealer Agreement; and (3) McKinney Mazda violated S.C. Code Ann. § 56-15-40(D)(9). (Mazda Ans. 16, ECF No. 10). On April 29, 2022, McKinney filed its answer to Mazda's counterclaim. (Pl.'s Ans. to Def.'s Countercl., ECF No. 20.)

Mazda filed the instant motion for judgment on the pleadings on July 7, 2022. (Mot. J. Pleadings, ECF No. 22.) McKinney filed a response in opposition on July 21, 2022. (Resp. Opp'n, ECF No. 25.). Mazda filed a reply on July, 28, 2022. (Reply, ECF No. 27.) This matter is now ripe for consideration.

---

[1] McKinney contemporaneously filed a motion for an ex parte temporary restraining order with its verified complaint. (Not. Removal Ex. A (Mot. TRO, ECF No. 1-1.) The state court denied the motion, but scheduled a hearing for February 17, 2022, to rule on McKinney's motion for a preliminary injunction. (Resp. Opp'n 6, ECF No. 25.) However, the hearing never occurred because this action was removed on February 15, 2022. (Id. 6, ECF No. 25.) McKinney has not renewed its requests for a temporary restraining order or preliminary injunction in this court.

## II. DISCUSSION OF THE LAW

### A. Legal Standard

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### 1. Ripeness

#### a. McKinney's Claims for Damages

Mazda asserts that McKinney's claims for violations of South Carolina Dealers Act, S.C. Code Ann. §§ 56-15-40(D)(3), 56-15-95, 56-14-40(D)(9); 56-15-47, and 56-15-70 are not ripe for adjudication because "the proposed termination of Plaintiff's franchise agreement simply has not occurred, and thus these claims are not ripe for adjudication." (Mot. J. Pleadings 7, 12, ECF No. 22) (McKinney's "threatened injury will never occur, or it will have a right to seek a remedy when these claims become ripe.")

The ripeness doctrine addresses subject matter jurisdiction and "presents a threshold question [ ] of justiciability." Scoggins v. Lee's Crossing Homeowner's Ass'n, 718 F.3d 262, 269 (4th Cir. 2013) (internal citations and quotations omitted). The inquiry into whether a claim is ripe aims to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to protect against "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). "To determine if a case is ripe, [the court] balance[s] the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC, 713 F.3d 187, 198 (4th Cir. 2013).

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (citing Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir.1992)). "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiff] . . . ." Charter Fed. Sav. Bank, 976 F.2d at 208-09. In considering the hardship, the court "may consider the cost to the parties in delaying judicial review." Miller, 462 F.3d at 319.

As to Mckinney's claims under S.C. Code Ann. §§ 56-15-40(D)(3) and 56-15-95, Mazda asserts that the Fourth Circuit's decision in Steves & Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690 (4th Cir. 2021), is analogous to the case at bar. (Mot. J. Pleadings 8, ECF No. 22.) In that case, the court reversed a jury decision awarding the plaintiff future damages as an alternative to divestiture resulting from the defendant's notice of intent to terminate a supply agreement in

6

seven years. Steves & Sons, 988 F.3d at 724-25. The court found that the plaintiffs' alleged injury hadn't "occurred at all" because the agreement had not yet been terminated and the defendant could change its mind. Id. at 725.

In the case at bar, McKinney has alleged that the Notice of Termination was effective immediately, causing Mckinney's license to expire. (Resp. Opp'n 8, ECF No. 25.) While the court acknowledges that Mazda provided the Manufacturer Letter after this lawsuit was filed, McKinney alleges that Mazda terminated the franchise agreement without due cause, and it has suffered actual damages as a result of its license expiring due to the Notice of Termination. (Not. Removal Ex. A (Compl. ¶ 45), ECF No. 1-1.) Accordingly, McKinney's claim for damages suffered while awaiting the Manufacturer Letter is ripe.

In addition, the court finds that Mazda's arguments concerning the ripeness of McKinney's claims asserting violations of S.C. Code Ann. §§ 56-14-40(D)(9), 56-15-47, and 56-15-70, are without merit. The crux of Mazda's argument is that these claims are not ripe because "any future evaluation, acceptance, or denial of Plaintiff's proposed changes are contingent upon multiple future events." (Mot. J. Pleadings 12, ECF No. 22.) However, as noted previously, McKinney has alleged that the Notice of Termination letters were effective immediately. (Resp. Opp'n 8, ECF No. 25.) Thus, McKinney has alleged that Mazda rejected its proposed succession plan. Therefore, McKinney's claims are ripe.

## 2. Violation of S.C. Code Ann. §§ 56-15-47, 56-14-40(D)(9)

S.C. Code Ann. § 56-15-47 provides that a franchisor "may not prevent a motor vehicle dealer from designating a successor to the dealership in the event of [the dealer's] death or incapacity" and that "[n]o individual may succeed to a franchise until the franchisor has been given written notice as to the identity, financial ability, and qualifications of the successor in question."

Similarly, Section 56-15-40(D)(9) prohibits a franchisor from preventing a dealer from selling or transferring any part of the interest in the dealership; "provided, however, that no dealer, officer, partner, or stockholder shall have the right to sell, transfer or assign the franchise or power of management or control thereunder without the consent of the . . . distributor . . . except that such consent shall not be unreasonably withheld." S.C. Code Ann. § 56-15-40(D)(9).

Mazda argues that this claim should be dismissed because McKinney has failed to allege "that Mazda has [w]rongfully [t]urned [d]own its [p]roposed [s]uccession [p]lans or [o]wnership [t]ransfers." (Mot. J. Pleadings 9, ECF No. 22.) Specifically, Mazda asserts that it has not violated these provisions because Mckinney failed to give the required written notice of the proposed ownership changes. Mazda contends that it has not prevented any transfer of ownership because any ownership change cannot be finalized until the action currently pending in South Carolina Probate court is finalized. (Id. 9-11, ECF No. 22.) The court finds that these arguments concern the merits of McKinney's claims.

On a motion to dismiss, the court "must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Bing v. Brivo Systems,

8

LLC, 959 F.3d 605, 616 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)." McKinney has alleged that it provided written notice of the proposed ownership changes. (Not. Removal Ex. A (Compl. ¶ 13), ECF No. 1-1); (Pl.'s Ans. to Def.'s Countercl. ¶ 8, ECF No. 20.) Resolution of any dispute as to whether this notice was timely or deficient in some respect is inappropriate for consideration in a motion to dismiss. See Bing, 959 F.3d at 616 ("The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.") (internal quotation marks and citation omitted).

In addition, Mckinney has alleged that "[t]he Trust document being disputed provided that the eventual share transfer would provide John with 100% (instead of 90%) of the Class A voting shares in McKinney Mazda." (Not. Removal Ex. A (Compl. ¶ 14), ECF No. 1-1.) Accordingly, the court finds that McKinney has sufficiently alleged a cause of action for violations of S.C. Code Ann. §§ 56-15-47, 56-14-40(D)(9).

### i. Violation of S.C. Code Ann. 56-15-70

S.C. Code Ann. 56-15-70 prohibits a franchisor from imposing "unreasonable restrictions on the motor vehicle dealer" relative to the transfer or sale of the dealership. Mazda alleges that McKinney has failed to identify "any unreasonable restriction, limitation, or condition that Mazda has allegedly imposed on it relative to its succession/ownership changes." (Resp. Opp'n 11, ECF No. 22.) At its core, Mazda simply argues that it "has neither approved nor rejected" McKinney's proposed ownership change. (Id. 11-12, ECF No. 22.)

McKinney has alleged that it provided a notice of the proposed ownership change and that John, at Mazda's request, began the application process. (Not. Removal Ex. A (Compl. §§ 13, 23), ECF No. 1-1.) McKinney also alleges that Mazda failed to provide a

9

copy of the Manufacturer Letter so McKinney could renew its license with the SCDMV and that Mazda sent the two Notice of Termination letters prior to the completion of the application process.  (Id. Ex. A (Compl. ¶¶ 21, 26, 28), ECF No. 1-1.)  The court finds that these allegations sufficiently allege "an unreasonable restriction" on McKinney's attempted ownership change.

### 3. Automobile Dealers Suit Against Manufacturers, 15 U.S.C. § 1221 et seq.

The Automobile Dealers Suit Against Manufacturers statute, commonly referred to as the Automobile Dealers Day in Court Act ("ADDCA"), provides motor vehicle dealers a cause of action against a manufacturer who fails "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise . . . ." 15 U.S.C. § 1222.  The ADDCA defines good faith as:

> the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party:  *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e).

This standard does not mean "good faith in a hazy or general way, nor does it mean unfairness." Autohaus Brugger, Inc. v. Saab Motors, Inc., 567 F.2d 901, 911 (9th Cir. 1978). Rather, a breach of the ADDCA good faith requires actual or threatened coercion or intimidation.  E. Auto Distributors, Inc. v. Peugeot Motors of Am., Inc., 795 F.2d 329, 336 (4th Cir. 1986) (citing Minson Plymouth, Inc. v. Chrysler Motors Corp., 554 F.2d 1266, 1267 (4th Cir. 1977) ("It is now well settled that in the absence of coercion, intimidation, or threats thereof, there can be no recovery under the [ADDCA].")).  As construed by the courts, actionable coercion or intimidation must include a wrongful demand coupled with threatened

coercion or intimidation for noncompliance with that demand. See, e.g., Bronx Chrysler Plymouth v. Chrysler Corp., 212 F. Supp. 2d 233, 245 (S.D.N.Y. 2002); Colonial Dodge, Inc. v. Chrysler Corp., 11 F. Supp. 2d 737, 743 (D. Md. 1996) (both citing cases).

Mazda argues that this claim should be dismissed "because [McKinney] [h]as [n]ot [i]dentified [a]ny [a]cts of [c]oercion, [i]ntimidation, or [t]hreats." (Mot. J. Pleadings 12, ECF No. 22.) McKinney has not alleged any acts of actual or threatened coercion or intimidation in connection with the termination of its franchise agreement. Further, the court finds that the Third Circuit opinion cited by McKinney is inapplicable as the law in the Fourth Circuit is settled -- "absen[t] [allegations] of coercion, intimidation, or threats thereof, there can be no recovery under the [ADDCA]." Minson, 554 F.2d at 1267. Thus, McKinney has failed to state a claim under the ADDCA and this claim is dismissed.

### 4. Breach of Contract Accompanied by a Fraudulent Act

In order to establish a claim for breach of contract accompanied by a fraudulent act, a plaintiff must show (1) a breach of contract; (2) that was accomplished with a fraudulent intention, (3) that was accompanied by a fraudulent act. Maro v. Lewis, 697 S.E.2d 684, 688 (S.C. Ct. App. 2010) (citation omitted). "In an action for breach of contract accompanied by a fraudulent act, the fraudulent act element is met by any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." Perry v. Green, 437 S.E.2d 150, 152 (S.C. Ct. App.1993). "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." Floyd v. Country Squire Mobile Homes, Inc., 336 S.E.2d 502, 504 (S.C. Ct. App. 1985). The South Carolina Court of

Appeals has explained that, fraud, in this context:

> assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience of and judgment of the court or jury in determining its presence or absence.

Parker v. Nat'l Honorary Beta Club, 815 S.E.2d 769, 771 (S. C. Ct. App. 2018) (quoting Sullivan v. Calhoun, 108 S.E. 189, 189 (S.C. 1921).

Mazda argues that McKinney "has failed to identify any alleged fraudulent act 'separate and distinct' from the acts it believes constitute a breach of the implied covenant [of good faith and fair dealing]." (Mot. J. Pleadings 15, ECF No.22) (citing Branham v. Wilson Motor Co., 198 S.E. 417 (S.C. 1938)). However, McKinney has alleged that Mazda's asserted reason for terminating the agreement was pretextual. (Not. Removal Ex. A (Compl. ¶ 27), ECF No. 1-1.) In Parker, the South Carolina Court of Appeals held that pretext can support a finding that a defendant has committed a fraudulent act. 815 S.E.2d at 772.

Mazda also argues that McKinney has failed to plead any acts of fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. (Mot. J. Pleadings 15, ECF No. 22); (Reply 7-9, ECF No. 27.) Under this rule, parties alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Parties must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)). However,

"[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

The South Carolina Supreme Court has broadly interpreted the "fraudulent act" element to include "any act characterized by dishonesty in fact or unfair dealing." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002). Consequently, a "wide variety of factual allegations suffic[e] to constitute a claim for fraudulent breach of contract." Edens v. Goodyear Tire & Rubber Co., 858 F.2d 198, 201 (4th Cir. 1988).

Based on the foregoing, McKinney has sufficiently pled a fraudulent act in connection with Mazda's alleged breach of contract with sufficient particularity. McKinney has alleged that Mazda's delay in submitting the Manufacturer letter was pretext because one of Mazda's asserted grounds for terminating the agreement was due to the lapsed SCDMV license. (Not. Removal Ex. A (Compl. ¶ 72), ECF No. 1-1.) Accordingly, the court finds that McKinney has sufficiently alleged a claim for breach of contract accompanied by a fraudulent act.

### III. CONCLUSION

Based on the foregoing, the court grants Mazda's motion for judgment on the pleadings with respect to the ADDCA claim. The court denies Mazda's motion as to McKinney's remaining claims.

It is therefore

**ORDERED** that Mazda motion for judgment on the pleadings, docket number 22, is granted in part and denied in part.

**IT IS SO ORDERED.**

                                                             s/Henry M. Herlong, Jr.
                                                          Senior United States District Judge

Greenville, South Carolina
August 3, 2022